Municipal Court of New York, January, 1924.        [Vol. 122

claim.  Here the defendant has interposed a counterclaim asking for a separation under section 266 of the Civil Practice Act.  There is no warrant in law that I have been able to find for such a pleading. However great the hardship, our practice does not permit it.  The legislature alone could afford relief in this regard.  There is much logic also in the procedure that forbids a separation question and an annulment to be adjusted in the same cause of action.  They are wholly inconsistent.  A separation assumes a marriage, while an annulment assumes no marriage or at least no legal marriage. The authorities that would uphold this are *Taylor* v. *Taylor*, 25 Misc. Rep. 566; *Levy* v. *Levy*, 148 N. Y. Supp. 417, and many others.  My conclusion is, therefore, that the counterclaim of the defendant must be disallowed.  The admission of the plaintiff as to the abandonment will make it a matter of no difficulty for her to secure the separation that she seeks from this plaintiff.  The relief to the plaintiff is denied under the power that I feel is possessed by a court of equity, and I give judgment for the defendant.

Judgment accordingly.

---

HARRY LAZAROWITZ and ABRAHAM LAZAROWITZ, Copartners Doing Business under the Firm Name of LAZAROWITZ BROTHERS, Landlords, v. ABRAHAM E. KAZAN, as Treasurer of New York Joint Board of the Amalgamated Clothing Workers of America, an Unincorporated Association Consisting of More than Five Members, and All Persons Claiming under Them, Tenants.

Municipal Court of the City of New York, Borough of Manhattan, Second District, October, 1923 (Received January, 1924).

Summary proceedings — illegal business — second floor of loft building in New York city leased for use as office and meeting room — when obligations created by lease precluded landlords from evicting tenants using floor for meeting purposes — when landlords deemed bound to secure quiet enjoyment to tenant at expense of complying with municipal order — evidence held insufficient to establish illegal use of premises — violation order not an adjudication of a violation.

Petitioners leased to an unincorporated association consisting of more than five members the second floor loft of a building in the city of New York for a term ending on December 30, 1923, to be used and occupied " as an office and meeting room by the tenants herein."  In a summary proceeding brought under section 1410(5) of the Civil Practice Act, which provides that a landlord may dispossess a tenant when he is conducting an illegal business upon the leased premises, it appeared that on June 21, 1923, the bureau of buildings issued the first certificate of occupancy regarding said premises, which certificate stated that the building might be used and occupied as a business building with the qualification, to wit, that the second floor thereof would accommodate twenty persons and its use was to be factory and office.  It was also in evidence that at various times there were two hundred and fifty people on said second floor; that on July 7,

1923, a violation order was served upon the landlords by said bureau of buildings stating that there existed on the premises a violation of the building code, in that said second floor was being occupied as a place of public assembly in violation of the said certificate of occupancy. *Held*, that the respective obligations as created by the lease precluded the petitioners from succeeding in the present proceeding.

But assuming that the lease was no bar to the proceeding, the failure of petitioners to show that two hundred and fifty members of the tenant association were more than petitioners owed a duty to under the lease, and the evidence given being insufficient to show that the tenants were conducting an illegal business on the leased premises in violation of any law, the tenants were entitled to a final order dismissing the proceeding upon the ground that petitioners had failed to make out a case.

The provision of the lease that the premises were let to be used and occupied " as an office and meeting room by the tenants " meant that if there are one thousand members of the joint board of the association each and all of them have a right, as against the landlords, to congregate on said second floor at any meeting and that in such case it would be the duty of the landlords, under the lease, to secure to all these members quiet enjoyment of the premises even at the expense of complying with the order of the bureau of buildings.

The violation order of July 7, 1923, though stating the leased premises were being used illegally and that if said order was not complied with the landlords would be guilty of a misdemeanor, was not an adjudication of a violation of the matters referred to in said order, even as against the petitioners, because the acts alleged to constitute the violation were not acts prohibited by statute but were acts the legality or illegality of which were in the first instance to be passed upon by a subordinate board, and its statement that an act was illegal was not conclusive, for the owner of the premises is entitled to contest that question whether in defense to an action for a penalty or to a prosecution for a misdemeanor.

The legislature not having expressly enacted that no building of the class in which the leased premises falls should be used as a place for public assembly, but rather having invested a subordinate board with power to investigate and determine the fact whether in any special case a use was being made of property which for some reason should be discontinued, the petitioners had the right to contest before a court of competent jurisdiction all questions upon which the legislature had expressed no opinion, hence neither the petitioners nor the tenants were concluded by the violation order of July 7, 1923.

Even though the certificate of occupancy stated that the leased premises accommodated twenty persons, proof that at various times there were two hundred and fifty persons on the floor forms no basis for a claim that there was a violation of said certificate and hence an illegal business.

Such evidence did not make out a *prima facie* case of conducting an illegal business for the reason that when a certificate of occupancy fixes twenty persons as the number a floor is to accommodate it does not mean thirty or a hundred or more persons are never to be on the floor but rather that more than twenty persons must not be regularly on the floor.

A witness for petitioners testified that on July 6, July 27, and August 29, 1923, he found more than two hundred persons on the second floor, and while one of the petitioners testified that at times he had observed more than two hundred persons sitting around on said floor he failed to state how many times he had observed that condition. *Held*, that the evidence was clearly insufficient to establish that said floor was being " used " within the meaning of the cases, to accommodate more than twenty people.

SUMMARY PROCEEDINGS to remove tenants.

*Pressinger, Newcombe, Cunningham & Wigg (Elmer E. Wigg,* of counsel), for plaintiffs, landlords.

*S. John Block,* for tenants.

GENUNG, J. This is a summary proceeding brought by the landlords to dispossess the tenants from the premises at Nos. 277–279 Bowery. The proceeding is brought under the provisions of section 1410, subdivision 5, of the Civil Practice Act (which provides that a landlord can dispossess a tenant from premises where the tenant is conducting on those premises an illegal business), and the landlords claim that the tenants are conducting on said premises an illegal business. The case is to be decided entirely on the pleadings and the evidence introduced by the landlord, as the tenants introduced no evidence whatsoever, but moved to dismiss at the close of the landlords' case.

The evidence introduced by the landlords may be summarized as follows: That on December 12, 1921, the landlords leased to the tenants, the " New York Joint Board of the Amalgamated Clothing Workers of America, an unincorporated association consisting of more than five members," the second floor loft of the building at Nos. 277–279 Bowery for a term of two years and twenty days from the 12th day of December, 1921, to the 31st day of December, 1923, to be used and occupied " as an office and meeting room by the tenants herein," at an annual rental of $3,400, payable in monthly installments; that on the 21st day of June, 1923, a certificate of occupancy was issued by the bureau of buildings of the city of New York, which was the first certificate of occupancy issued regarding the premises 277–279 Bowery, and which stated that the said building is of non-fireproof construction within the meaning of the Building Code, and may be used and occupied as a business building as hereinafter qualified, to wit, that the second floor thereof would accommodate 20 persons, and its use was to be factory and office; that at various times there were 250 people on this said second floor; that on July 7, 1923, a violation order was served upon the landlords herein by the bureau of buildings of the city of New York stating that there existed a violation of the Building Code on the premises at Nos. 277–279 Bowery, in that the second floor of said premises was being occupied as a place of public assembly in violation of the certificate of occupancy above referred to, which specified as the use of said floor factory and offices. The landlords rely on this evidence to show that the tenants are conducting an illegal business on these premises and, therefore, can be dispossessed. The tenants, how-

ever, claim that the landlords' evidence does not make out a case for dispossession under section 1410, subdivision 5, of the Civil Practice Act.

In the first place, the respective obligations as created by the lease would prevent the landlords from succeeding in this proceeding. The lease here provides that the premises are let to be used and occupied " as an office and meeting room by the tenants." The tenants are designated in the lease as the " New York Joint Board of the Amalgamated Clothing Workers of America, an unincorporated association consisting of more than five members," and their number is not specified nor limited. The landlords are under a duty to every one who is a member of the joint board to permit him to come on that second floor to use it as an office and meeting room. This means that if there are 1,000 members of the joint board each and all those members have a right against the landlords to congregate on this second floor at any meeting. In such a case it would be the duty of the landlords under the lease to secure to all these members quiet enjoyment of the premises even at the expense of complying with the orders of the bureau of buildings. The landlords fail to show that 250 members are more than they owed a duty to under the lease. Nor can the landlords argue that the lease must be construed to limit the number allowed on the second floor to the number permitted by the certificate of occupancy, since at the time the lease was entered into no permissible number had been specified in any certificate of occupancy.

But assuming that the lease is no bar to the landlords in this proceeding, they have failed to make out a case because they have not shown that the tenants are conducting an illegal business within the meaning of section 1410, subdivision 5, of the Civil Practice Act. The statutes give no definition as to when one is conducting an illegal business on premises. The case of *Saportes* v. *Hayeck*, 111 Misc. Rep. 620, 623, suggests a definition of such a business in these words: " Section 2231 has to do solely with the occupation of an illegal business. The defendants, if the facts alleged in the petition can be established, were occupying a tenement house for lodging house purposes. *That is an illegal business when conducted in a tenement house*, and is an illegal business as defined in section 2231, subdivision 5, of the Code, *supra*."

From this it appears that a fair statement of this definition would be as follows: One uses premises for an illegal business within the meaning of section 1410, subdivision 5, of the Civil Practice Act, when he violates a law forbidding him to conduct that particular business on those particular premises. The land-

Municipal Court of New York, January, 1924.　　　[Vol. 122

lords' evidence failed to establish that the tenants were so occupying the second floor in question as to violate any law. Two theories are urged to show that this evidence proves the tenants were violating a law in their conduct of the business on said premises, but neither one of these theories is tenable.

In the first place it is argued that the violation order of July 7, 1923, shows that this second floor was being used by the tenants as a place of public assembly; that since it was so used it was a public building and legally required to be fireproof; that as it was not fireproof (as evidenced in the certificate of occupancy) the tenants were conducting a business in a non-fireproof building which the law requires shall be conducted in a fireproof building, and hence were violating the law. The answer to this argument is that the landlords do not show that the tenants can use this second floor as a place of public assembly only if the building is fireproof; that chapter 5 of the Code of Ordinances requires that public buildings of *certain dimensions hereafter erected* shall be fireproof, and that the evidence of the landlords does not show that Nos. 277–279 Bowery was a building hereafter erected, nor that it came within the specified dimensions which would require it to be fireproof as a public building, assuming it was such. The evidence of the landlords that at various times 250 persons were congregated on this second floor as a result of the business being conducted thereon by the tenants does not strengthen the landlords' case in showing the violation of a law, because this number of persons congregated has legal significance only so far as it shows that the floor was being used as a place of public assembly, and, as has just been shown, the evidence of the landlords is insufficient to make such use illegal. But assuming that the law is that a place can be used for a public assembly only if the building is fireproof, still the landlords' evidence would be insufficient, because they rely solely on the documents of the bureau of buildings to show that the building is non-fireproof, and that its use constitutes it as a place of public assembly, and, as will be shown below, such documentary evidence is not conclusive on any of the facts contained therein. In support of this argument the landlords offered the records of the bureau of buildings, consisting of the certificate of occupancy and the violation order, both supported by the oral testimony of the persons responsible for same, as evidence of the fact that the building was non-fireproof, and that it was being used as a place of public assembly.

In the second place it is argued that the evidence proves the business illegal on the theory that the violation order itself is conclusive proof that the tenants are conducting on these premises

an illegal business, *i. e.*, the landlords claim that the violation order when testified to by the person filing the violation makes the question of illegal user by the defendants *res adjudicata.* The landlords claim that this violation order is conclusive of illegal use because it states that the second floor is being used illegally, and because if not complied with the landlords will be guilty of a misdemeanor.

This violation order is not an adjudication of a violation, even as against the landlords, because the acts alleged to constitute the violation are not acts which the statute has expressly prohibited, but are acts the legality or illegality of which are in the first instance to be passed upon by a subordinate board. In such a case, when this subordinate board states that the act is illegal it does not conclude the matter, for the owner of the premises in question is entitled to contest in court, whether as a defense to an action for a penalty or prosecution for a misdemeanor, the question of the legality of the acts. That such is the law in New York is shown by the case of *Health Department* v. *Rector, etc.*, 145 N. Y. 32, 46. " The citizen cannot, under this act, be punished in any way, nor can any penalty be recovered from him for an alleged non-compliance with any of its provisions or with any order of the board of health without a trial. The punishment or penalties provided for in section 665 cannot be enforced without a trial under due process of law, and upon such trial he has an opportunity to show whatever facts would constitute a defense to the charge; to show, in other words, that he did not violate the statute or the order of the board or that the statute itself or the order was unreasonable and illegal. He might show that the house in question was not a tenement house within the provision of the act, or that there was a supply of water as provided for by the act, or any other fact which would show that he had not been guilty of an offense with regard to the act."

The rule is also set forth in the case of *Fire Dept. of N. Y.* v. *Gilmour*, 149 N. Y. 453, 458: " In other words, where the legislature in exercise of the police power enacts a regulation defining the duty of citizens, either in respect of their personal conduct or the use of their property, the reasonableness of the thing enjoined or prohibited is not an open question, because the supreme legislative power has determined it by enacting the rule (see Dil. on Mun. Corp., sec. 328, and cases cited). But where the legislature, as in the present case, enacts no general rule of conduct, but invests a subordinate board with the power to investigate and determine the fact whether in any special case any use is made of property for purposes of storage, dangerous on account of its liability to

originate or extend a conflagration, not prescribing the uses which it permits or disallows, then we are of opinion that in such cases the reasonableness of the determination of the board or of the order prohibiting a particular use in accordance with such determination, is open to contestation by the party affected thereby, and that he is entitled, when sued for a disobedience of the order, to show that it was unreasonable, unnecessary and oppressive. The general rule in respect to the validity of ordinances of a municipal corporation, passed under a general or implied authority to enact ordinances to secure the welfare of the people of the municipality is that they must be reasonable, and are void if not so. The courts do and doubtless should exercise great caution in interfering with the exercise of police regulations enacted under general powers conferred upon municipal corporations or subordinate public agents. But the public interests are also subserved in protecting citizens against unnecessary, unreasonable and oppressive regulations, interfering with a reasonable use of their property or their freedom of action. * * * But we think he was entitled to contest in the action for the penalty the reasonableness of the order made and the facts upon which it proceeded (*People ex rel. Copcutt* v. *Board of Health,* 140 N. Y. 1; *Health Dept.* v. *Rector, supra; City of Salem* v. *Eastern R. R. Co.,* 98 Mass. 431)."

In the instant case the legislature has not expressly enacted that no building of the class in which Nos. 277–279 Bowery falls shall be used as a place of public assembly. Rather it has invested a subordinate board with the power to investigate and determine the fact whether in any special case a use is being made of property which for some reason should be discontinued. The questions here of whether a building is non-fireproof, or whether the defendants are using the second floor as a place of public assembly, and of whether such use for some reason of safety of life or property should be discontinued, are all questions upon which the legislature has expressed no opinion, and as to which the landlords would have the right to contest before courts of competent jurisdiction. The case of *Saportes* v. *Hayeck,* 111 Misc. Rep. 620, was not such a case as this; there we have a case of where the legislature in the exercise of the police power had enacted a regulation defining the duty of citizens with respect to the use of their property. That was a summary proceeding where the landlord sought, under the same section as is involved here, to dispossess him from a tenement house on the ground that his use of the tenement house as a lodging house constituted using it as an illegal business. The landlord there put in evidence that the defendant was using the tenement house as a lodging house, and upon this the tenant moved to dismiss.

The appellate court held that the motion should be denied on the ground that if such a use by the tenant was proved it would constitute the use of the premises for an illegal business. The legislature has expressly prohibited the use of a tenement house as a lodging house, section 109 of the Tenement House Law reading as follows: " No tenement house or premises thereof shall be used for a lodging house or stable or for the storage or handling of rags."

In such a case it is not for a subordinate board to say whether the use of a tenement house as a lodging house is legal or illegal, and hence such a tenant or landlord would not be allowed to contest in court whether a proper use is being made of the premises. It is obvious that the instant case is not a similar case, but is one upon which the legislature has expressed no opinion. Hence the landlords here are concluded in no way by the violation order which the bureau of buildings served upon them. Since the landlords are not concluded by this violation order, even more the tenants are not concluded by it. That such is the rule of law is shown by the case of *Erickson* v. *Smith*, 2 Abb. Ct. App. Dec. 64, 69, which states the rule as follows: " The statement of the ruling is that the certificate (certificate of inspection by a public officer) was received as evidence showing the inspection, but not as evidence of the facts recited in it; — which was entirely accurate, whether it included more or less than has already been supposed to have been within the ruling; for it is very well settled that the recitals in an instrument are never evidence against a stranger to it, as the plaintiff in this case most clearly was."

The rule is again stated in *Gorham Co.* v. *United Engineering & Const. Co.*, 202 N. Y. 342, 347, where it is said: " Respondent was allowed to introduce evidence of a certain proceeding instituted by the superintendent of buildings of the city of New York addressed to respondent as owner of the building and to one Astor as owner of the ground, requiring certain things to be done to make the building safe, and to which appellant was in no manner a party." Again at page 350 the court says: " On proper analysis the proceeding appears to have been one instituted under statutes founded on the police power, on notice to the parties claimed to be guilty of a violation of the law for the purpose of abating the violation, and I know of no authority which makes the record of such a proceeding evidence in a private controversy between one of the parties and a stranger."

There is a final ground upon which it is claimed an illegal business can be predicated, but this also is unsupportable. It is argued that the certificate of occupancy states that the second floor of

Nos. 277–279 Bowery accommodates twenty persons; that the evidence shows that at various times there were two hundred and fifty persons on this floor; that, therefore, there is a violation of the certificate of occupancy, and hence an illegal business. Such evidence does not make out a *prima facie* case of conducting an illegal business, for the reason that when the certificate of occupancy fixes twenty persons as the number a floor is to accommodate it does not mean that thirty or a hundred or more persons are never to be on the floor. Rather it means that more than twenty persons must not be regularly on the floor. Isolated cases where more than twenty persons are on a floor are not a violation of the certificate of occupancy; it is only when there is a permanent condition of more than twenty persons being on the floor that it might be argued that the certificate of occupancy is being violated. This quotation from the case of *Tenement House Dept.* v. *McDevitt*, 215 N. Y. 160, 164, shows clearly that such a requirement of regularity and permanency exists under the New York law: " We think the plaintiff failed to prove that the defendant's building had been used, in the sense contemplated by the statute, for the purpose of prostitution. To charge an owner with liability, there must be more than a single act of vice in the seclusion and secrecy of a tenant's apartment. Against such an offense, a landlord, however vigilant, is helpless. To make the owner liable, it must appear that the building has been ' used ' for the purpose of prostitution, and *this imports, not an isolated act of vice, but some measure, even though brief, of continuity and permanence.* To say that a building is used for such a purpose means in substance *that it is kept or maintained for such a purpose.* Many well-considered cases sustain that construction of the statute. Thus, in *Commonwealth* v. *Patterson*, 138 Mass. 498, the defendant was charged with keeping and maintaining a tenement that was ' used ' for the illegal sale of intoxicating liquors. Evidence was given that two sales had been made. The trial judge held that if the defendant had made either of the sales the jury must find him guilty. The Supreme Judicial Court of Massachusetts reversed the judgment. It held, in an opinion by Holmes, J., that a building *cannot be said to be* ' used ' for the illegal sale of intoxicating liquors within the meaning of the statute which makes it a nuisance ' *on the strength of a single casual sale,* made without premeditation, in the course of a lawful business. Not only do the words ' used ' and ' keep or maintain ' *import a certain degree of permanence,* but the same idea is usually a part of the conception of a nuisance.' There was a like ruling in *Commonwealth* v. *Hayes*, 150 Mass. 506, and in *State* v. *Stanley*, 84 Maine, 555. In *Regina* v. *Davies*, L. R. (1897) 2 Q. B. 199, the

court construed a statute by which the owner or occupier of a house or room who kept or used it for the purpose of unlawful gaming carried on therein was made liable to a penalty. The decision was that a single unlawful game, played by the defendant and his friends, without evidence that any one else had ever played an unlawful game at the defendant's house on any other occasion, did not justify a conviction. A like construction has been given to statutes prohibiting the use of buildings for the purpose of prostitution. *State of Iowa* v. *Irvin*, 117 Iowa, 469; *State of Iowa* v. *Ruhl*, 8 id. 447. In all these cases *some element of permanence has been held essential to a conviction.* It is true, of course, that a building may be so used even on a single day as to justify the inference with but slight additional evidence that the illicit use has been continuous. But the inference in such a case is one of fact and not of law, and must be drawn, if at all, by the trial judge in the light of all the circumstances. The plaintiff makes no claim in this case that such an inference is possible. It takes its stand upon the broad position *that a single act of vice* leads as a matter of law to the conclusion that the building in which the act occurs is one used for prostitution. We do not need to inquire at this time whether the legislature has the power to visit on the owner a penalty so drastic. At least, if it has that purpose, it must say so in plain words. We think it has not said so yet."

In this proceeding one of the witnesses for the landlords testified that on July 6, July 27 and August 29, 1923, he found over 200 men on the second floor. One of the landlords testified that he had observed over 200 persons at times sitting around on the second floor, but he failed to state how many times he had observed such a condition. This evidence is clearly insufficient to establish that the second floor was being " *used* " (within the meaning of the cases) to accommodate more than 20 people. Hence the evidence fails to show that the tenants were violating the certificate of occupancy, and hence this final ground for showing conduct of an illegal business fails.

Thus it appears that on no theory does the landlords' evidence show that the tenants are using the premises for an illegal business, nor do the landlords negative the inference to be drawn from the evidence that it is their own duty, if the business is being illegally conducted, to correct that illegality, if necessary, by altering the premises.

In view of these circumstances the tenants are entitled to final order dismissing the petition herein.

Final order accordingly.

Ordered accordingly.