THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* EDWARD NELSON, Appellant.

Argued January 20, 1955; decided July 8, 1955.

*Nancy Carley* for appellant. I. The trial court erred in its insistence and proclamations that notice and knowledge of violations to defendant were of no consequence in the case because, insofar as the second count of the indictment was concerned, the jury may well have found as a matter of fact that there could be no culpable negligence on defendant's part without such notice or knowledge. (*People* v. *Angelo,* 246 N. Y. 451.) II. The court erred in its insistence that appellant could be guilty without general notice since this court has held that when notice is fraudulently withheld the withholder is the culprit, and thus it was a question of fact for the jury whether there was fraud in the withholding of notice herein and whether such fraud brought appellant within the above-mentioned holdings. (*Pharm* v. *Lituchy,* 283 N. Y. 130; *Kilmer* v. *White,* 254 N. Y. 64.) III. The trial court erred in failing to dismiss the first count of the indictment at the end of the People's case insofar as the People failed to prove that defendant was engaged in an independent misdemeanor. (*People* v. *Grieco,* 266 N. Y. 48; *People* v. *Vollmer,* 299 N. Y. 347; *People* v. *Luscomb,* 292 N. Y. 390.) IV. The court erred in not dismissing the first count of the indictment at the end of the People's case insofar as the misdemeanor charge was not a crime against the person or property of another. (*People* v. *Grieco,* 266 N. Y. 48; *Adler* v. *Deegan,* 251 N. Y. 467.)

*Edward S. Silver, District Attorney (William I. Siegel* of counsel), for respondent. I. Appellant's guilt was established beyond a reasonable doubt. (*People* v. *McCarthy,* 250 N. Y. 358.) II. No errors of law were committed by the trial court. (*People* v. *Schwartz,* 273 App. Div. 823, 298 N. Y. 551; *People* v. *Harris,* 74 Misc. 353; *People* v. *Diamond,* 95 Misc. 114; *People* v. *Buddensieck,* 103 N. Y. 487; *People* v. *Sandgren,* 302 N. Y. 331; *People* v. *Polstein,* 184 App. Div. 260, 226 N. Y. 593; *People* v. *Vollmer,* 299 N. Y. 347; *People* v. *Luscomb,* 292 N. Y. 390; *People* v. *Giblin,* 115 N. Y. 196; *People* v. *Patini,* 208 N. Y. 176; *People* v. *Wagner,* 245 N. Y. 143; *People* v. *Clark,* 7 N. Y. 385; *Adler* v. *Deegan,* 251 N. Y. 46; *People* v. *Angelo,* 246 N. Y. 451.)

DYE, J. The defendant-appellant appeals to this court by permission from a judgment of the Appellate Division, Second Judicial Department, modifying* and affirming as modified a judgment of the County Court of Kings County rendered upon a jury verdict convicting the defendant of the crimes of manslaughter, first degree, and manslaughter, second degree (Penal Law, § 1050, subd. 1; § 1052, subd. 3).

The indictment upon which the conviction was based contained two counts: The first charged manslaughter in the first degree insofar as the death of two persons was caused by a fire which occurred in defendant's multiple dwelling. These persons were unable to escape because of lack of adequate fire protection which defendant had knowingly neglected to provide, as required by the Multiple Dwelling Law, a misdemeanor, affecting " the person or property " of the two persons killed (Penal Law, § 1050, subd. 1; Multiple Dwelling Law, §§ 187, 188, 189, 304). The second count charged manslaughter in the second degree by reason of the fact that under the same circumstances of ownership he " wilfully and wrongfully used said building " in an unlawful manner and " with gross and culpable negligence " owned, operated and neglected to render the " building safe for the tenants and occupants thereof " by failing to provide adequate fire protection as required by law, and thereby caused the death of two persons (Penal Law, § 1052, subd. 3; Multiple Dwelling Law, §§ 187, 188, 189, 304).

---

* The modification in the Appellate Division eliminated the sentence of seven and one-half to eleven years imposed on the manslaughter second conviction (Penal Law, § 1938).

The appellant concedes that his premises were existing in violation of the safety provisions required by the Multiple Dwelling Law, and that such violations were the proximate cause of the death of two tenants. He, nonetheless, prays that his conviction on both counts be set aside on the ground that the trial court erred, as a matter of law, in ruling that lack of notice of the aforesaid violations afforded no defense, thereby depriving the jury of its right to determine as a question of fact, on the issue of culpable negligence, whether without such notice or knowledge he was " engaged in committing, or attempting to commit, a misdemeanor, affecting the person or property, either of the person killed " or whether such homicide when committed without a design to effect death, was the result of culpable negligence.

It is true defendant was not personally notified of the violations in conformity with section 326 of the Multiple Dwelling Law, but nothing turns on such omission for such notice is not required in a criminal proceeding (*People* v. *Schwartz*, 298 N. Y. 551). However, the record is replete with proof establishing that he had knowledge of the existence of the violations. There is evidence showing that the plaintiff had been a tenant of the subject premises for over fifteen years; that he was well familiar with its physical aspects, including lack of sprinkler system and secondary egress for use in case of fire. There came a time in 1951 when he negotiated with the then owner to purchase the premises. At the closing of title on June 15, 1951, the defendant was present and represented by attorneys. A report furnished by the company issuing the title insurance noted violations of the Multiple Dwelling Law and these were set forth in a deed which was given subject to such violation. While defendant now says that this reference to the violation was not brought to his attention, he nonetheless is bound thereby. In addition to such uncontroverted documentary proof, there is oral testimony to the effect that he had told a tenant that because boys were using the roof scuttle as a means of entrance, he had nailed it shut; that the real estate agent had told defendant of the need for fire escapes and that defendant had made measurements for such installation but that he " hadn't gotten to it yet ".

On November 17, 1952, the defendant undertook to repair a leak in the roof. He heated a tar compound in a shallow pan over an open gas burner located in the basement. The tar caught fire and despite his best efforts spread to the building. He ran to give the alarm to the tenants. It was too late. Two tenants who were cut off jumped from the fourth-story window and were badly injured. One died and a third tenant trapped in her apartment was burned to death. An assistant fire marshal testified that on the day of the fire the defendant had told him that " he knew he was supposed to have fire escapes or a sprinkler ".

In such a setting the defendant is chargeable with knowledge of the existence of the violation — a misdemeanor (Multiple Dwelling Law, § 304) " affecting the person and property * * * of the person killed " (Penal Law, § 1050, subd. 1) and, even though such violations were committed without design to effect death, his act was culpable within the meaning of subdivision 3 of section 1052 of the Penal Law. This is so whether or not he knew the penal consequences of such culpability.

*People* v. *Grieco* (266 N. Y. 48), relied on by the appellant, is not authority to the contrary. There the defendant was charged with manslaughter while engaged in the commission of a misdemeanor, namely, reckless driving while intoxicated, in such a manner as to cause the death of a human being. The trial court charged the jury that at the time of the killing the defendant was committing a misdemeanor affecting the person killed or another, within the meaning of section 1050 of the Penal Law. We ruled this was error and set aside the conviction, inasmuch as the People had not contended or proven that the defendant saw the deceased before his automobile struck her or that he intentionally ran her down, thus holding that prior knowledge was an essential ingredient of the crime charged which, under the circumstances of that case, was justified.

The within case falls more properly within our rule in *People* v. *Alexander* (293 N. Y. 870), wherein we unanimously affirmed a judgment rendered on a jury verdict convicting the defendant-appellant of the crime of manslaughter in the first degree under section 1050 of the Penal Law and manslaughter in the second degree under section 1052. The indictment had charged that defendant and two others, as owners in possession and control of a multiple-family dwelling, willfully and with gross negligence,

had failed to comply with the Multiple Dwelling Law and other laws, with the result that seven persons lost their lives in the fire in a tenement building for lack of prescribed safety equipment. The defendant admitted that the building was not equipped as required for " old law tenement houses " but that the building in question was not a tenement house as defined in subdivision 9 of section 4 of the Multiple Dwelling Law, but rather a Class B multiple dwelling as defined in subdivision 5 thereof. The case went to the jury under a charge to the effect that, as far as the misdemeanor is concerned, ignorance of the law is no excuse. The jury rendered a verdict finding the defendant guilty of manslaughter in the first and second degrees as charged (Penal Law, §§ 1050, 1052) and we affirmed unanimously.

In the case at bar the conviction must also be upheld. From the time of the appellant's acquisition of title to the date of the fire, a period of about one and one-half years, the lack of a secondary means of egress or a sprinkler system constituted a continuing misdemeanor " affecting the person * * * killed ". This continuing omission to provide proper fire protection was not merged in the homicide of the two deceased tenants as claimed by the appellant. The situation is not analogous to the assault homicide where a continuing assault against one resulting in death is merged in the homicide (*People* v. *Vollmer*, 299 N. Y. 347; *People* v. *Luscomb*, 292 N. Y. 390). It is undeniable that a tremendous duty is placed upon the owners and those in charge of property under the applicable section of the Multiple Dwelling Law; however, it is quite apparent that the Legislature intended the burden to be onerous so that owners would be impressed with the consequences flowing from violation of the statute, which violations could so readily endanger human life in the congested conditions under which people must live in the city of New York.

The judgment of conviction as modified should be affirmed.

VAN VOORHIS, J. (dissenting). Defendant appeals from a criminal conviction of manslaughter in the first degree. The indictment charged him in particular with violation of subdivisions b and c of section 187 of the Multiple Dwelling Law, in not having a means of egress extending through the roof of a four-family multiple dwelling which he owned at 71 Lefferts

Place, Brooklyn, and in failing to have two independent means of egress from the building or one means of egress equipped with a sprinkler system. Violations are misdemeanors (§ 304). On November 17, 1952, this building burned. There is evidence in the record from which a jury could find that two persons lost their lives as a result of the absence of these statutory requirements. Manslaughter in the first degree is defined by subdivision 1 of section 1050 of the Penal Law as including homicide committed without a design to effect death, "By a person engaged in committing, or attempting to commit, a misdemeanor affecting the person or property, either of the person killed, or of another". That is the basis for defendant's conviction.

Appellant's defense was chiefly based upon his lack of knowledge or notice of the existence of these violations, but the trial court excluded such testimony upon the ground that the misdemeanors with which appellant was charged were *mala prohibita*, that he could be guilty of these violations of the Multiple Dwelling Law without having created or even knowing the condition of the building, and that, if the deaths of the persons named in the indictment resulted therefrom, he is automatically guilty of manslaughter regardless of culpable negligence and irrespective of any criminal intent. If the last conclusion is correct, it seems to me that the law has retreated a long distance into a stage of primitive formalism.

Appellant had himself been a tenant in these premises for a number of years. He is a Negro seventy-one years old whose education ended with the first grade in elementary school. His defense was that he had recently bought this real property; that he did so for a cash consideration of $1,000 and a purchase-money mortgage of $7,500, under threat of eviction by the former owner unless he became the owner; that these violations had been filed against the former owner without having been caused to be removed by the city department of housing and buildings, and were deliberately concealed from him by his vendor in order to induce him to purchase the property and to relieve the former owner of responsibility; that although there is a general recital in the deed that the conveyance is subject to building violations, he did not read it personally or know its full contents, and that the deed was recorded by the vendor's agent who procured it back from the register's office and kept it in his possession in order

to prevent these matters from coming to appellant's attention. Appellant contends that he was in complete ignorance of these circumstances until he found himself confronted with a charge of manslaughter, but that the trial court withheld this defense from the jury upon the ground that criminal intent is unrelated to his guilt or innocence.

Testimony by witnesses for the prosecution is at variance with defendant's version, but removing the whole question of guilty knowledge from the jury was a serious infraction of appellant's rights, unless the court was correct that notice and criminal intent are not factors in this kind of manslaughter.

Manslaughter where death results from the commission of a misdemeanor is analogous to felony murder (*People* v. *Grieco*, 266 N. Y. 48, 53). "Felonious intention, as an element of the homicide, is supplied by the intention to do the unlawful act of which the homicide is a consequence. The intent is transferred by implication of law." (26 Am. Jur., Homicide, § 188, pp. 281, 282.) As in the case of felony murder, no design to effect death is necessary, but just as there must have been an intention to commit an independent felony in case of murder, so must there have been an intent to commit an independent misdemeanor in order to render a defendant guilty of manslaughter. Otherwise the whole underlying theory of criminality is withdrawn from the felony charge. At least, where the misdemeanor consists in a continuing offense which is *malum prohibitum,* a defendant must have been aware of its existence before being convicted of manslaughter. It is said (40 C. J. S., Homicide, § 57, pp. 920–921) that, in determining whether a homicide was committed by a person while engaged in the commission of a misdemeanor, he must have had an intent to commit the act which constitutes the misdemeanor. Appellant's position is similar to that of a mortgagee confronted by a charge of manslaughter in case of death from fire immediately after taking title to mortgaged premises. The mortgagee has not created the condition which constitutes the misdemeanor and may be ignorant of it. Under those circumstances, he cannot be guilty of manslaughter on the ground of culpable negligence. Can he be held to be guilty of the felony charge solely upon the theory that he is constructively guilty of the misdemeanor? I think not. The mere circumstance that

such a mortgagee would not have had to have harbored an intent to violate the Multiple Dwelling Law in order to render him guilty of the misdemeanor, would not suffice to convict him of manslaughter unless he were aware of the existence of the violation and had opportunity to correct it. That follows from the language of section 1050 (subd. 1) of the Penal Law which states that homicide is manslaughter when committed by a person " engaged " in committing or attempting to commit a misdemeanor. The use of the words " engaged in committing " signify conscious personal participation in the commission of the misdemeanor. That much is fundamental to the criminal law, which seizes upon the wrongful intent to accomplish the lesser crime and utilizes it as a basis for visiting upon the wrong-doer the consequences of the greater wrong which has unexpectedly and unintentionally followed in its train. If awareness of the misdemeanor is held to be irrelevant, the basis for guilt of manslaughter is eliminated. Wharton's Criminal Law states that " When there is a general intent to do evil, in other words, of which evil the wrong actually done may be looked upon as a probable incident, then the party having such general intent is to be regarded as having intended the particular wrong." (12th ed., Vol. 1, § 157, p. 213.) This court was acutely conscious of the necessity for moral wrong in discussing the doctrine of merger in the felony murder case of *People* v. *Huter* (184 N. Y. 237, 243) when it said that " A person who attempts or engages in the commission of a felony, is not only chargeable with express malice, but also with being perversely wicked, evincing a depraved mind and a disregard of human life, and if, while so engaged, he causes the death of a person, although unintentional, the legislature has seen fit to enlarge the crime and make it murder in the first degree ". If a criminal purpose is so large and necessary an element to fulfill the doctrine of " transferred intent " in case of felony murder, can it be true that one may become guilty of manslaughter in complete moral innocence without so much as knowing that a misdemeanor has occurred? If the People's witnesses testified truthfully, defendant is not morally guiltless, but that does not concern the outcome of this appeal inasmuch as the trial court did not give him his day in court on this issue by refusing to allow him to testify to his

lack of knowledge of these building violations, and therefore his conviction can stand only upon the basis that his moral innocence is irrelevant.

Vendors who have concealed building violations from their vendees have been held civilly liable for damages to injured persons in place of the vendees (*Pharm* v. *Lituchy,* 283 N. Y. 130; *White* v. *Kilmer,* 254 N. Y. 64). In the latter case this court approved the following section of the Restatement of Torts: " Liability for Concealed Dangerous Conditions Known to Vendor. A vendor of land, who conceals or fails to disclose to his vendee any condition whether natural or artificial involving unreasonable risks to persons upon the land, is subject to liability for bodily harm caused thereby to the vendee and others upon the land in his right, after the vendee has taken possession if: a. The vendee does not know of the condition or the risk involved therein, and b. the vendor knows of the condition and the risk involved therein and has reason to believe that the vendee will not discover the condition or realize the risk." (§ 353.) It would appear that a fortiori a defendant in a criminal prosecution for manslaughter should be allowed to testify to his lack of knowledge of such a risk, leaving it to the jury to decide whether he is telling the truth.

In *Reg.* v. *Franklin* (15 Cox C. C. 163, 165) Justice FIELD said wisely " I have a great abhorrence of constructive crime." In that case the defendant unlawfully threw a crate into the sea at the public bathing beach at Brighton, which accidentally killed a bather. The court refused to submit to the jury what it called " the narrow ground " that the act of throwing this box into the sea at a public bathing resort was unlawful. The case was submitted upon the broad ground of culpable negligence, which is an entirely different matter.

Abhorrence of constructive felony has been shared by many an American court. In *Estell* v. *State* (51 N. J. L. 182), the New Jersey Court of Errors and Appeals reversed a manslaughter conviction where a tollhouse keeper had been killed while the defendant attempted to drive his horses through the gate without payment of toll. That act was prohibited by law. The defendant had been found guilty of manslaughter " by reason of the single fact of his having attempted to pass through the toll gate without paying his toll ". The court said that apart from culpable negli-

gence, " This was a plain misstatement of the legal principle. * * * The mere unlawfulness of the act does not, in this class of cases, *per se,* render the doer of it liable, in criminal law, for all the undesigned and improbable consequences of 'it. The doctrine is stated in the text books, and is exemplified in a long train of decisions. 1 Bish. Crim. L. (2d ed.), § 258."

The surest reply to the distorted view that criminal liability depends upon chance is to insist wherever possible upon moral guilt in felony convictions. Although the common-law crime of involuntary manslaughter has been superseded by statute, the Legislature should not readily be deemed to have required manslaughter convictions without criminal intent. Death caused by a person " engaged in committing a misdemeanor " was designed to mean by a person consciously engaged in committing the misdemeanor. Criminal intent is not a necessary factor in some misdemeanors, and may not be required in case of violations of these sections of the Multiple Dwelling Law. But under the doctrine of transferred intent, which is as applicable to manslaughter growing out of misdemeanor under section 1050 (subd. 1) of the Penal Law as it is in felony murder under section 1044 (subd. 2), it by no means follows that the Legislature intended to create constructive criminal liability to the felony charge. " Outside of a narrow class of exceptions, punishment is meted out by the law of crimes for a specific unlawful intent." (*People* v. *Katz,* 290 N. Y. 361, 365.) Such crimes as are merely *mala prohibita* are of lesser magnitude and, even in such instances, are strictly construed (*People* v. *Werner,* 174 N. Y. 132, 134). The general minor character of such offenses is thus described in *People* v. *D'Antonio* (150 App. Div. 109, 113): " There is no doubt about the general rule that one cannot be convicted of a crime without proving a criminal intent, but this rule has its exceptions. Statutes which are in their nature police regulations, as the one here under consideration is, impose criminal penalties, irrespective of any intent and obviously for the purpose of requiring a degree of diligence for the protection of the public against violations." Manslaughter is not a police regulation, and is not lightly to be regarded as having been intended by the Legislature to be capable of being sustained without evidence of criminal intent in the commission of the underlying misdemeanor. This court considered at length a

question closely related to the present in an opinion by Judge Lehman in *People* v. *Clark* (242 N. Y. 313), where a conviction was reversed of a public officer for having received " emolument, gratuity or reward * * * except such as may be authorized by law ". That crime is made a felony by section 1826 of the Penal Law, and nowhere expressly includes guilty knowledge on the part of the officer. Nevertheless, it was held to have been error for the trial court to have refused to charge that " if the defendant received the sum of $1,000 from Mr. Cass and the defendant believed that he had a right to receive. the same and did receive it without wrongful and corrupt intent, the defendant cannot be convicted." The opinion states : " It may be said with equal right that no court should impute to the Legislature the intent, even if it has the power, to make such innocent act a felony, and construction of a criminal statute to include such acts is unreasonable if other construction is possible." (Pp. 325–326.) And this court there said further that " Penal statutes should be construed accordingly to give effect to the legislative intent. The crime of receiving money ' not authorized by law ' is not committed unless the money is received with wrongful intent. That intent is shown when it appears that the public officer has received something which he knows that the law does not permit him to accept." (P. 329.)

The Supreme Court of Nebraska in *Thiede* v. *State* (106 Neb. 48, 53–54; note 15 A. L. R. 244) applied this principle to the question now at hand saying : " We believe the rule to be that, though the act, made unlawful by statute, is an act merely *malum prohibitum* and is ordinarily insufficient, still, when such an act is accompanied by negligence or further wrong, so as to be, in its nature, dangerous, or so as to manifest a reckless disregard for the safety of others, *then it may be sufficient to supply the wrongful intent essential to criminal homicide,* and, when such act results in the death of another, may constitute involuntary manslaughter.

" Such an unlawful act alone, unaccompanied by negligence, is insufficient. *Potter* v. *State,* 162 Ind. 213, 64 L. R. A. 942; *State* v. *Horton,* 139 N. Car. 588, 1 L. R. A. n. s. 991; *Estell* v. *State,* 51 N. J. Law, 182; *Commonwealth* v. *Adams,* 114 Mass. 323; *People* v. *Pearne,* 118 Cal. 154; *State* v. *Trollinger,* 162 N. Car. 618." (Italics supplied.)

The first paragraph quoted from the *Thiede* case (*supra*) was quoted with approval in *People* v. *Pavlic* (227 Mich. 562), which held that selling intoxicating liquor resulting in the death of the buyer through acute alcoholism and exposure to cold, does not render the seller guilty of involuntary manslaughter in the absence of intent or recklessness manifesting a reckless disregard of human life, although the selling of intoxicating liquor was made a felony by statute. To similar effect is *Copeland* v. *State* (154 Tenn. 7).

In *People* v. *Grieco* (266 N. Y. 48, 52, *supra*) where the People based a charge of manslaughter upon the contention that driving an automobile while intoxicated constitutes a misdemeanor, this court said of the People's assertion: "*The intent to commit the minor offense would make the driver guilty* of the more serious offense of manslaughter" (italics supplied). It is relevant to the present point that Grieco's alleged guilt of manslaughter was founded upon an "intent to commit the minor offense". In the case at bar, the trial court held that the existence of an intent to commit the minor offense was irrelevant.

Allied to the need of establishing a criminal intent in order to sustain a conviction of manslaughter, is the issue that has frequently arisen concerning whether manslaughter can be based on accidental homicides growing out of any and every kind of misdemeanor. In the able and exhaustive 1937 Report of the Law Revision Commission to the Legislature upon this subject, it was said: "Most other states include provisions in their statutes to the effect that homicide committed in the course of a misdemeanor or in the course of an 'unlawful act' less than a felony is manslaughter. Courts, called upon to construe these, have evinced a uniform reluctance to interpret the provision literally, and manage to read into it limitations which materially modify its rigor. As in the case of the felony murder rule, limitations have been effected in two ways — the imposition of the requirement of some causal connection between the underlying offense and the homicide, and a limitation of the kind of unlawful act which will be sufficient to furnish a basis for the charge of manslaughter. Both are encountered in various forms: it is variously stated merely that some causal connection must exist, or that the homicide must be the natural and probable consequence or the proximate result of the unlawful act. Still greater

diversity exists in the statement of the law concerning the nature of the misdemeanor. Some authorities emphasize that the underlying offense must be intrinsically dangerous to human life; others, that it must be in violation of a statute designed to protect human life. By far the greatest number assert, however, that it must be *malum in se,* and that an act only *malum prohibitum* resulting in homicide is insufficient to subject the wrongdoer to liability for manslaughter. Among the misdemeanors which have been held to be insufficient under one criterion or another in cases where the defendant was charged with homicide, are hunting on another's land, carrying a concealed pistol, selling liquor, and driving past a tollgate to evade payment of toll. Infractions of laws regulating the operation of motor vehicles have been the subject of greater controversy, but such acts, though sometimes characterized as *mala prohibita,* are generally held to fall within the provisions of statutes on manslaughter committed in the course of unlawful acts." (1937 Report of N. Y. Law Revision Commission, pp. 663–664.)

A fatal automobile accident case bearing out the last statement is *People* v. *Darragh* (141 App. Div. 408, affd. 203 N. Y. 527). But in *People* v. *Grieco* (266 N. Y. 48, *supra*), a conviction in such an instance " was reversed by the Court of Appeals ", quoting again from the Law Revision Commission's Report (p. 746), " in an opinion which seems to adopt as its basis the dissenting opinion in the *Darragh* case " of Justice McLaughlin at the Appellate Division. It was held in *Grieco* that although driving an automobile while intoxicated was a misdemeanor, it was not one " affecting the person or property, either of the person killed, or of another ". The indictment was dismissed upon the ground of merger also, for the reason that there was no separate, independent crime in which the defendant was collaterally engaged at the time of the homicide. The misdemeanor would simply have been punishable as a felony. There is no doubt that death at the hands of intoxicated drivers upon the public highways is a public menace, and the distinction is narrow between declining to hold that such a misdemeanor is aggravated into manslaughter where homicide accidentally results, and an opposite conclusion where death flows from a violation of the Multiple Dwelling Law also without any independent crime.

The *Grieco* decision sprang from a realization of the need to limit the application of subdivision 1 of section 1050 to serve the ends of justice. As was said by the Law Revision Commission (Report, p. 744): "the statutes are honeycombed with misdemeanor provisions. The probability is that most death-resulting acts would come within some misdemeanor section. It would be a most exceptional case in which the underlying act would not be brought within at least one of these specific provisions. In the second place, the Penal Law contains several misdemeanor sections of a general and catch-all nature, which in themselves cover a wide sphere of acts and would fill most of the interstices that might be found to exist in the network of specific misdemeanors."

Without attempting to define exactly how or where the operation of subdivision 1 of section 1050 should be confined, these trenchant comments by the Law Revision Commission accent the importance of holding that an accused shall at least have been aware of the facts constituting the underlying misdemeanor before he can be convicted of misdemeanor manslaughter. Sir Matthew Hale, in his Pleas of the Crown, declared that homicides in the course of any act *malum prohibitum* are neither murder nor manslaughter (1st Amer. ed., 1847, Vol. 1, p. 428). Decisions in many States and countries have been patterned on that idea. Even if we are to hold that a misdemeanor which is *malum prohibitum* can form the basis for a manslaughter conviction, the defendant should at least have been aware of the facts constituting the misdemeanor.

Knowingly to neglect to provide proper means of egress in case of fire would constitute *malum in se* in the form of culpable negligence. That charge is not before us. Elimination of knowledge of the existence of a statutory violation as a factor in misdemeanors consisting in violations of the Multiple Dwelling Law, renders such misdemeanors *mala prohibita*. No one questions that an owner is guilty of misdemeanor even though he is ignorant of the building violation. But to have been found guilty of misdemeanor manslaughter, a defendant should have known at least of the existence of the underlying offense, yet the trial court ruled and instructed the jury on this count in the indictment, that not only was this defendant held to strict com-

pliance with this statute (which was correct so far as being guilty of the misdemeanor went), but that neither ignorance of the condition of the building nor of the Multiple Dwelling Law was a defense to first degree manslaughter. This was almost equivalent to charging the jury that he was guilty under the first count as matter of law. Defendant's counsel duly excepted to these portions of the charge and to the rulings excluding evidence of that character.

Service of a notice of violation is not essential to guilt of the misdemeanor (*People* v. *Schwartz*, 298 N. Y. 551). It may not have been essential to manslaughter based on misdemeanor, if defendant knew the facts constituting the misdemeanor, although it was unfair for the People to have introduced extensive evidence that defendant's predecessor in title was given frequent notices by the department of housing and buildings which were not enforced during a period of nine years, and then to have restricted defendant in showing lack of notice to himself coupled with an instruction that lack of knowledge or notice in any form could not exonerate him. In effect, this conveyed the idea to the jury that the city department of housing and buildings had already determined the facts necessary to establish defendant's guilt, while his predecessor was the owner, and that nothing which happened afterward except the fire was of any consequence. If absence of notice of violations from the city to defendant meant nothing, even-handed justice would seem to inquire why repeated notices to his predecessor meant so much?

One may assume from his familiarity with the building that defendant knew that there was no outside fire escape or other secondary means of egress. He may also have known that there was no sprinkler system, which section 187 of the Multiple Dwelling Law provides would have rendered secondary means of egress unnecessary. A question of fact was presented (except that the Trial Judge removed it from the jury), whether he knew that the means of egress through the roof (scuttle) was fastened down so as to be unavailable. In her harrowing account of this fire in which her husband died, Mrs. Elizabeth Green emphasized on the witness stand that she and her husband could have escaped through this exit to the roof, but did not attempt to do so for the reason that defendant had told her that its covering

had been nailed down to prevent entrance by mischievous boys. Defendant denied this conversation. The jury may have found that Mrs. Green's husband, who jumped to the ground, and the other person whose life was lost might have been saved if they could have used the escape to the roof. If the jury found, as the District Attorney presented to the jury, that the exit to the roof was closed, then it became especially important for them to have considered whether defendant knew that this means of egress had been eliminated. One of the jurors interrupted during the charge by asking " When a person buys a home, is there a law that requires him at that time, before buying the home, to see if there are any violations against it in the Housing Department? " No categorical answer was given to this inquiry, but the instruction which was delivered amounted to an affirmative reply. The effect was to tell the jury that defendant was guilty of manslaughter.

The Appellate Division eliminated the sentence imposed on the second degree manslaughter conviction, founded upon the charge of culpable negligence. As I interpret this modification, elimination of this sentence amounted to dismissal of the second count, in view of section 1938 of the Code of Criminal Procedure which states that conviction under one count bars prosecution under the other if both have been based upon the same set of facts. That is what the Appellate Division stated is the situation here. However that may be, defendant's conviction under the second count could hardly have been affirmed in view of instructions, duly excepted to, that knowledge or notice of pending violations was irrelevant. Defendant might well have been tried under that count alone, and his felony guilt or innocence have been made to depend upon the really substantial issue of culpable negligence.

The conviction should be reversed and a new trial granted.

CONWAY, Ch. J., DESMOND, FULD and BURKE, JJ., concur with DYE, J.; VAN VOORHIS, J., dissents in an opinion in which FROESSEL, J., concurs.

Judgment affirmed.